IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL LEE GOLTZ,

Civil No. 06-1244-AS

       Petitioner,

FINDINGS AND RECOMMENDATION

   v.

JEAN HILL,

       Respondent.

     DENNIS N. BALSKE
     621 S.W. Morrison
     Suite 1025
     Portland, OR  97205

       Attorney for Petitioner

     HARDY MYERS
     Attorney General
     LESTER HUNTSINGER
     Senior Assistant Attorney General
     Department of Justice
     1162 Court Street N.E.
     Salem, OR  97301

       Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ASHMANSKAS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Amended Petition for Writ of Habeas Corpus should be denied and this action should be dismissed.

## BACKGROUND

On April 20, 1997, Petitioner and Raymond Heauser argued in a Medford bar when Heauser came upon Petitioner threatening an older man in the bathroom.  According to Heauser, Petitioner threatened him, left the restaurant, returned a few minutes later with two others, and again threatened him.  A bartender escorted Petitioner and the two others out of the bar.

Later that night, at around 1:15 a.m., Heauser left the bar with Anthony Martin.  The two sat in Martin's car for a few minutes.  Martin started the engine, then saw a moving car out of the corner of his eye and heard a "pop, pop" sound.  He turned as saw a man firing a weapon, then ducked to the floor of the car. Heauser also ducked his head down and something ricocheted off his left finger into the head liner of the car.  When Martin later saw Petitioner's photograph in the newspaper following his arrest, Martin recognized Petitioner as the shooter.

Taxi driver Pierre Petetit was parked near the bar's front door that night when saw a small red car come up the hill and stop.  Petitit heard "pops or gunshots" and ducked down on his

2 - FINDINGS AND RECOMMENDATION -

seat.  As he sat back up, he saw a flash of blonde hair as the car drove away.

Police officers found five bullet holes or bullet fragments in Martin's car, and six expended .380 shell casings at the scene. The weapon used in the shooting was never recovered.  When police searched Petitioner's vehicle, they found a holster and ammunition for a .380 caliber weapon.  At Petitioner's residence, police found a disassembled 9-millimeter handgun, a short-barrel pump shotgun and shells, and more .380 caliber ammunition.

The grand jury indicted Petitioner on two counts each of Attempted Aggravated Murder, Attempted Murder, and Attempted Assault in the First Degree.  He was also charged with three counts of Felon in Possession of a Weapon, one count of Assault in the Second Degree, and one count of Unlawful Use of a Weapon.[1]

Petitioner entered a not guilty plea, and the court appointed attorney Lorenzo Mejia to represent Petitioner.  Trial was set for June 17, 1997.  On June 12, 1997, Mejia told Petitioner he and his investigator needed more time to prepare for trial, and that a conviction was probable if the trial went ahead as scheduled, but Petitioner refused to waive his state speedy trial rights.  On the day of trial, before the jury was empaneled, Mejia informed the judge with the Petitioner present that he had advised Petitioner

---

[1]Three additional charges in the indictment, which related to a separate event, were dismissed before trial.

3 - FINDINGS AND RECOMMENDATION -

the trial should be continued, but that his client refused to

waive his speedy trial rights:

> MR. MEJIA:  . . . The only thing, again, now that
> [Petitioner] is here, I am, I am as ready as I can be on
> the time constraints we have, and I just want to put on
> the record with [Petitioner] present that I have advised
> him that I think it would be in his best interest to
> continue this matter so we could deal with,
> specifically, some scientific or forensic type evidence
> that came in last week, and basically that the, a good
> of the evidence has come in within, I would say, the
> last two weeks to the last ten days. I've talked to him
> at length about that.  That's not his desire.  And I
> just wanted that to be on the record.
>
> THE COURT:  Thank you.  [Petitioner], is that correct
> that you do not wish to have your case continued?
>
> PETITIONER:  Yes, sir, that's correct.
>
> THE COURT:  And you want to go ahead and go to trial
> today, and you understand what Mr. Mejia is saying, and,
> and you want to go as it stands right now?
>
> PETITIONER:  Yes, sir, I do.

Trial Transcript ("Tr."), pp. 12-13.

The jury returned guilty verdicts on all counts.  The trial

judge sentenced Petitioner to a total term of 240 months of

imprisonment, plus a period of post-prison supervision.

Petitioner appealed on state law issues, and the Oregon Court

of Appeals affirmed in a written opinion.  State v. Goltz, 169 Or

App. 619, 10 P.3d 955 (2000).  The Oregon Supreme Court denied

review.  State v. Goltz, 331 Or. 583, 19 P.3d 356 (2001).

Petitioner sought state post-conviction relief ("PCR"),

alleging five claims of ineffective assistance of counsel.

Following an evidentiary hearing, the PCR trial judge denied relief.  On appeal, Petitioner's attorney raised one claim of ineffective assistance of counsel, and Petitioner filed a "*Pro Se* Supplemental Brief*" raising an addition claim.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

On August 30, 2006, Petitioner filed this habeas corpus action.  In his Amended Petition for Writ of Habeas Corpus, he alleges he received constitutionally ineffective assistance of counsel because his trial attorney failed to:

  (1)  advise petitioner that he needed to delay his trial in order to obtain an expert ballistics consultation, to obtain a ballistics expert, or to challenge the basis for the expert's opinion, either prior to or during trial;

  (2)  request a lesser-included offense instruction for the offense of reckless endangering; and

  (3)  seek severance, bifurcation, or other relief that would have kept petitioner's prior felony conviction from the jury.

Respondent argues Petitioner procedurally defaulted his third claim for relief and the portion of his first claim alleging ineffective assistance for filing to challenge the basis for the expert's opinion, either prior to or during trial.  Respondent contends the state court decisions denying relief on the remaining claims are entitled to deference.  Petitioner concedes he

defaulted the third claim, but contends his "actual innocence" excuses the procedural default.

## DISCUSSION

I.  **Relief on the Merits - Claims 1 and 2**

    A.  **Legal Standards**

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." <u>Williams v. Taylor</u>, 529 U.S. 362, 409.

A state court decision can be overturned for legal error only if the state court's application of Supreme Court case law was "objectively unreasonable." <u>Penry v. Johnson</u>, 532 U.S. 782, 793 (2001). Federal courts "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." <u>Taylor v. Maddox</u>, 366 F.3d 992, 999 (9th Cir. 2004).

A state court's determination of a factual issue "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence. <u>Id</u>.

An unreasonable determination of the facts occurs when the state court makes evidentiary findings without giving petitioner an opportunity to present evidence, misstates the record, ignores the record, or misapprehends the evidence presented. <u>Taylor v. Maddox</u>, 366 F.3d 992, 1001 (9th Cir.), <u>cert. denied</u>, 543 U.S. 1038 (2004). If upon review of the evidence on which the state court based its determination the federal court does not find the determination unreasonable, the state court findings are presumed to be correct. A petitioner can rebut this presumption only by presenting clear and convincing evidence that the state court

findings of fact are in error. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341-42 (2003).

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. <u>Van Lynn v. Farmon</u>, 347 F.3d 735, 738 (9th Cir. 2003) (citing <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002)), <u>cert. denied</u>, 541 U.S. 1037 (2004). When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not <i>de novo</i>. <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). Instead, this court considers whether the state decision was "objectively reasonable" after conducting an independent review of the record. <u>Id</u>.

Under <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1987), a petitioner claiming ineffective assistance of trial counsel must show (1) that counsel's performance was deficient, or that it fell below an objective standard of reasonableness, and (2) that the deficiency prejudiced the petitioner, as there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. <u>Id</u>. at 690. Failure to make the required showing on either prong defeats the ineffectiveness claim.

B.    Analysis

1.    Expert Witness

In his first claim, Petitioner alleges trial counsel rendered ineffective assistance of counsel when he failed to explain to Petitioner the need to delay the trial to obtain an expert ballistics consultation, to obtain a ballistics report, or to challenge the basis for the state expert's opinion, either prior to or during trial.[2]    In support of this claim in his PCR proceeding, Petitioner offered a ballistics report prepared by Dr. Raymond Grimsbo, as well as Petitioner's testimony that had his attorney alerted him of the need for a ballistics expert, he would have agreed to a continuance of the trial.

Considering Petitioner's claim in light of the underlying trial record and the evidence presented to him, the PCR trial judge concluded:

> THE COURT:  ... Regard to the expert.  (INAUDIBLE) talk about if he told me he needed time to get an expert (INAUDIBLE).  You know the fact of the matter is that there's no testimony in this case about what, if any, decisions Mr. Mejia had reached about this forensic evidence other than he knew he had to review it.  And there's no evidence that says, for instance, that Mr. Mejia had reached a conclusion that he needed to hire an expert and he didn't tell the defendant.  I'm not sure

---

[2]Respondent's argument that Petitioner did not exhaust that portion of his claim pertaining to the failure to challenge the basis for expert's opinion, either prior to or at trial," is without merit.  While Petitioner may not have used that specific wording in his PCR claim, it is substantially equivalent to the claim considered and rejected by the PCR court.

that that would rise to the level of incompetence [sic]
counsel anyway; we simply don't know what – Mr. Mejia
said he needed more time to review it.  And that's all
we know and that's all the testimony shows here.  And
whether or not he would have concluded that he needed an
expert or not is pure conjecture.  So that one doesn't
carry the day.

* * *

The timing, of course, that kind of ties back to
hiring an expert.  It's clear that [Petitioner] wanted
to go to trial.  That attorney Mejia didn't want – did
not want to go [to] trial, that he told both
[Petitioner] and the Court that he wasn't prepared, he
needed more time to do things and strictly recited some
things around forensic evidence.  But [Petitioner] was
insistent they go to trial and you can't now turn around
and complain about his lawyer's lack of doing things
because he forced him to go to trial before he was
ready.

Resp. Exh. 121, pp. 29-31.

Upon review of the record, the PCR court's conclusion that
Petitioner could not prevail on his ineffective assistance of
counsel was not contrary to or an unreasonable application of the
standards set forth in *Strickland*.  Moreover, the PCR court's
conclusion was not based on an unreasonable determination of the
facts in light of the evidence presented.  Because the PCR court's
conclusion that trial counsel was not constitutionally ineffective
in connection with the ballistic evidence was not objectively
unreasonable, his decision is entitled to deference under 28
U.S.C. § 2254(d), and Petitioner is not entitled to habeas corpus
relief in this Court.

### 2.    Lesser-Included Offense Instruction

In his second claim, Petitioner alleges trial counsel provided constitutionally ineffective assistance when he failed to request a lesser-included offense instruction of the offense of reckless endangering.

In the PCR proceeding, attorney Mejia submitted an affidavit stating:

> In paragraph 14, petitioner alleges that I failed to request a lesser-included offense.  I discussed the request for numerous lesser-included offenses with petitioner.  However, he insisted on an alibi defense. Asking for a lesser-included and arguing for one would have been an admission that petitioner was at the scene at the time of the shootings.

Resp. Exh. 120, p. 3.  Here, Petitioner contends this excuse is "belied by the record" since Mejia made the following statement during closing:

> MR. MEJIA: . . .  So from there we go to what did happen, and that is an assault two.  Now, I'm not conceding, and I'm not saying that [Petitioner] did an assault two, but that is what happened this evening. Mr. Heauser suffered a physical injury caused by a deadly weapon.  That's actually what, the crime that occurred in the parking lot at Apple Annie's.

Tr., p. 447.  Given this statement, Petitioner argues, Mejia already contradicted the alibi defense and should have taken the next step of arguing reckless endangerment.  Petitioner further contends the PCR trial judge did not take this statement into account in reaching his decision.

The PCR trial judge had the trial transcripts before him at the time of the PCR evidentiary hearing. Moreover, he obviously reviewed the transcription of Mr. Mejia's closing statement, because in reference to a different claim, the judge stated:

> THE COURT:  In regard to the issue raised about his statement about if you find the defendant guilty of one, you've got to [be] guilty of the other; that, quite frankly, had me concerned *until I read the transcript* and that's taken completely out of context I believe.

Resp. Exh. 121, p. 30 (emphasis supplied).  With regard to Petitioner's lesser-included offense claim, the PCR judge concluded:

> THE COURT:  The jury instruction issue, I think Mr. Cottrell states it very succinctly.  You know, this is a tactical issue.  He's got a defendant that [sic] telling him this is an alibi case, I wasn't there, it wasn't me.  And certainly Mr. Mejia's explanation about not asking for that instruction because he was afraid it would have an adverse impact on the alibi defense makes perfect sense to me.

Id.

The PCR court's decision to deny relief on this ineffective assistance of counsel claim was neither "contrary to" nor an "unreasonable application of" Strickland, and such decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner is not entitled to habeas corpus relief on his second claim.

II.  **Procedural Default - Claim 3**

    **A.  Legal Standards**

    Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  See 28 U.S.C. § 2254(b)(1).  To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).

    When a habeas petitioner fails to raise a federal claim in state court the claim is procedurally defaulted and federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice.  Sawyer v. Whitley, 505 U.S. 333, 338 (1992); Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir. 1993).  "A 'fundamental miscarriage of justice' occurs when 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998) (quoting Murray v. Carrier, 477 U.S. 478, 495-496 (1986)).

    The actual innocence exception to procedural default is not a constitutional claim itself, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred

constitutional claim considered on the merits." <u>Schlup v. Delo</u>, 513 U.S. 298, 315 (1995) (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993)).

In essence, a petitioner facing a procedural bar must satisfy a two-part test in order to pass through the "<u>Schlup</u> gateway." First, the petitioner must produce new, reliable evidence that was not presented at trial to supplement his constitutional claim with a colorable showing of factual innocence. <u>Schlup</u>, 513 U.S. at 324. Such evidence may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." <u>Id</u>.

Second, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id</u>. at 327-28. In other words, a petitioner "need only present evidence of innocence strong enough 'that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 478 (9th Cir. 1997) (quoting <u>Schlup</u>, 513 U.S. at 316). In considering this new evidence, the court is not bound by the rules of admissibility. <u>Id</u>.

**B.   Analysis**

In his third claim, Petitioner alleges trial counsel failed to seek severance, bifurcation, or other relief that would have kept Petitioner's prior felony conviction from the jury. Petitioner concedes he procedurally defaulted this claim, but argues his actual innocence should excuse the default.

Petitioner argues the new ballistics evidence in the form of Dr. Raymond Grimsbo's report at the PCR trial is sufficiently strong that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  The court disagrees.

At most, a reasonable juror might conclude that the prosecutor's expert witness overstated the reliability of the ballistics tests he performed.  In light of the remaining evidence against Petitioner, including the eyewitness identification by one of the victims, it is not more likely than not that no reasonable juror would have found Petitioner guilty of the crimes for which he was committed on the basis of the new evidence purporting to discredit the state's expert witness.  Accordingly, Petitioner does not establish "actual innocence" sufficient to overcome the procedural default of his third claim of ineffective assistance of counsel.

**RECOMMENDATION**

For these reasons, the Amended Petition for Writ of Habeas Corpus should be DENIED and a judgment of DISMISSAL should be entered in this action.

DATED this  4th  day of February, 2008.


        /s/ Donald C. Ashmanskas
           Donald C. Ashmanskas
           United States Magistrate Judge



**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due February 21, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.


16 - FINDINGS AND RECOMMENDATION -